UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

GARRETT WHITTENBURG,

    Plaintiff,

    v.

LAKE COUNTY JAIL, et al.,

    Defendants.

CAUSE NO. 2:23-CV-412-PPS-APR

OPINION AND ORDER

Garrett Whittenburg, a prisoner without a lawyer, filed a complaint. ECF 1. As required by 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Whittenburg is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Notably, however, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Whittenburg is currently incarcerated at the Lake County Jail, and all the events he complains of happened there.[1] In May of 2022, he alleges his property was searched by Correctional Officer Brooks in the hallway outside of his presence while he was transferring cells, but he wasn't given a "search slip." ECF 1 at 4. He received his property back "sometime later the same day." Id. at 14. During a separate instance in July of 2022 as he was being transported to medical, he informed the correctional officers his property was already packed up, but they confiscated it anyway and left it unattended for several hours before it was returned.

On February 20, 2023, all the cells in his pod were subjected to a routine search, and the inmates were placed in a vestibule together for several hours while the search occurred. During that time, Whittenburg got into a fight with another inmate, so he was placed in a holding cage. After about thirty minutes, Whittenburg was allowed to pack up his property, and he was moved to a new cell in the disciplinary segregation unit. Correctional Officer Stuart Jackson took his property bag with all his "food item[s] equaling in value $60.00 and held the property for a search." Id. at 16. Whittenburg's property bag was held for four hours before it was returned. However, upon inspection, he noticed his food was gone except for a "beef barbacoa, a half bag of refried beans, a half bag of coffee, and a chili wet pack." Id. at 10, 16.

---

[1] Due to the electronic filing system, I'm aware that Whittenburg filed fourteen separate lawsuits in the Northern District of Indiana between November 27–29, 2023, five of which are before me. He filed an additional two lawsuits on December 7, 2023. Whittenburg makes it clear that this lawsuit pertains specifically to his alleged property rights.

On March 23, 2023, Whittenburg was released from segregation. Officer Hock took him to the property room to get his commissary items back, but he was told they were missing. Whittenburg spoke with Sgt. Elcko who advised him the officers on duty the day he was placed in segregation—Sgt. Mamule, Sgt. Sterzek, and an unknown sergeant—were responsible for the missing food items. However, in May of 2023, Whittenburg spoke with Correctional Officer Stuart Jackson who admitted it was his fault because he "left [Whittenburg's] property bag with commissary and all legal mail inside of the telemate booths thinking the next shift was gone (sic) give it to [him] which didn't make sense." *Id.* at 16. Sgt. Sterzek told him he would "just have to take a loss" for the missing commissary items. *Id.*

On August 6, 2023, Whittenburg got into a non-physical altercation with another inmate and was again placed in a holding cage for about three hours. Correctional Officer Bowan brought his property into the hallway to search it. When Whittenburg was being moved, he wasn't allowed to check his bag to make sure everything was there. Upon arrival at his cell, he noticed over "$100.00 in commissary food items [was] missing." *Id.* at 17. Whittenburg believes the loss may have been because his cellmate "supposedly pack[ed his] property" up. *Id.*

Whittenburg has sued various defendants from the Lake County Jail for monetary damages for his "pain and suffering, psychological, emotional stress." ECF 1 at 1. He also seeks injunctive relief in the form of modifying the Lake County Jail's search procedures so that inmates are present while their property is searched and so

3

they are issued a property slip "with inmate signature and staff signature to prevent issues like this from reoccurring." *Id*.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, determining whether a search is violative of the Fourth Amendment is a question of reasonableness and "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). With regard to prisons in particular, however, the Supreme Court established a "limited categorical rule" that the Fourth Amendment's prohibition of unreasonable searches doesn't apply to those conducted "'within the confines of the *prison cell*.'" *Henry v. Hulett*, 969 F.3d 769, 777 (7th Cir. 2020) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (emphasis in original).[2] This is because the "right to privacy in possessions and living quarters" while incarcerated is "'fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.'" *Id*. at 778 (quoting *Hudson*, 468 U.S. at 527–28). These principles apply equally to both pretrial detainees and convicted prisoners. *Id*. at 779.

Here, I find that Whittenburg hasn't stated a Fourth Amendment claim regarding any of the property searches he describes. On the face of the complaint, the

---

[2] An exception to that limited categorical rule has been recognized wherein "the Fourth Amendment protects (in a severely limited way) an inmate's right to *bodily privacy* during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry*, 969 F.3d at 779 (emphasis added). Whittenburg doesn't allege he was subjected to a strip search, so that exception doesn't apply here.

4

searches were limited to his property bag and cell(s) rather than his person. Therefore, they didn't violate the Constitution under the limited categorical rule set forth in *Hudson*, and he isn't entitled to monetary or injunctive relief related to those searches.

To the extent Whittenburg is complaining about his missing commissary property, the Fourteenth Amendment provides that State officials shall not "deprive any person of life, liberty, or property, without due process of law," but, a state tort claims act which provides a method to seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the due process clause. *Hudson*, 468 U.S. at 533 ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees. Those state laws provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."); *see also Johnson v. Wallich*, 578 Fed. Appx. 601, 602 (7th Cir. 2014) (affirming dismissal with prejudice of plaintiff's property loss claims pursuant to 28 U.S.C. § 1915A(b)(1) because state law provides post deprivation "remedies for those whose property has been converted or damaged by another").

Therefore, Whittenburg's alleged property losses related to his commissary items do not state a federal claim either.[3]

This complaint fails to state any claims. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons I explained above, such is the case here.

Accordingly, this case is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) because the complaint fails to state any claims.

SO ORDERED.

ENTERED: December 20, 2023.

    /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

---

[3] To the extent Whittenburg may be trying to assert a negligence, conversion, or some other state law claim related to his property, the allegations are too disjointed and vague to state a plausible claim against any of the named defendants. Even if he had stated such a claim, I would decline to exercise supplemental jurisdiction and would instead dismiss it without prejudice. *See* 28 U.S.C. § 1367; *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010).